# In the United States Court of Appeals for the Fifth Circuit

JENNIFER HARRIS,
*Plaintiff-Appellee,*

*v.*

FEDEX CORPORATE SERVICES, INC.,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Texas

———————————————

## PETITION FOR REHEARING EN BANC

———————————————

BRIAN P. SANFORD
Texas Bar No. 17630700
Elizabeth "BB" Sanford
Texas Bar No. 24100618

THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, Texas 75201
(214) 717-6653
(214) 919-0113 Fax

**ATTORNEYS FOR APPELLEE JENNIFER HARRIS**

No. 23-20035

Jennifer Harris, *Plaintiff-Appellee,*
*v.*
FedEx Corporate Services, Inc., *Defendant-Appellant.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Jennifer Harris, Plaintiff-Appellee

    Counsel for Plaintiff-Appellee:

    Brian P. Sanford (lead counsel)
    Elizabeth (BB) Sanford
    The Sanford Firm

FedEx Corporate Services, Inc. Defendant-Appellant

    Counsel for Defendant-Appellant:

    Kyle D. Hawkings
    Leah F. Bower
    Lehotsky Keller LLP
    Barak J. Babcock
    Christopher M. Ahearn
    Federal Express Corporation

        */s/ Brian P. Sanford*
        Attorney for Appellee

# STATEMENT OF COUNSEL

1.      The panel decision conflicts with *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608 (1947), that a contract may shorten a statute of limitations only if the shorter period is itself reasonable; and *Burnett v. Grattan*, 468 U.S. 42, 44 (1984), finding that a six-month limitation for claims under the Civil Rights Act of 1866 is neither a sufficient amount of time nor within public policy.

2.      The panel decision conflicts with *Schweiker v. Hogan*, 457 U.S. 569, 585 (1982) and *Ford-Evans v. United Space All. LLC*, 329 F. App'x 519, 524 (5th Cir. 2009) permitting the appellees to raise arguments on appeal not considered by the district court.

3.      The panel decision involves questions of exceptional importance concerning the "maximum recovery rule." The decision conflicts with the standard used by other circuits which simply rely on evidentiary support as a limit. *See Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 36 (1st Cir. 1999); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 162 (2d Cir. 2014); *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362 (Fed. Cir. 2001); *Jabat, Inc. v. Smith*, 201 F.3d 852, 858 (7th Cir. 2000); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 513 (9th Cir. 2000); *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1079 (10th Cir. 2008). Other circuits have approved verdicts of a million or more

dollars in employment cases similar to this case. *See Turley,* 774 F.3d 140 at 162 (Second Circuit); *Passantino,* 212 F.3d at 513 (Ninth Circuit). The "maximum recovery rule" also conflicts with *Matherne v. Wilson*, 851 F.2d 752, 762 (5th Cir. 1988), allowing the plaintiff the option of a new trial to justify a different amount. The "maximum recovery rule" raises serious issues with procedural and substantive due process, as well as the Seventh Amendment.

4.     The panel decision conflicts *Lincoln v. Case*, 340 F.3d 283, 291 (5th Cir. 2003) by increasing the standard of proof for punitive damages.

5.     The panel decision conflicts with *Williams v. Illinois*, 567 U.S. 50, 57 (2012) allowing an expert to express an opinion that is based on facts that the expert assumes, but does not know, to be true.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF COURSE OF THE
PROCEEDING AND DISPOSITION OF THE CASE .......................... 2

STATEMENT OF NECESSARY FACTS...............................................3

ARGUMENT AND AUTHORITIES ................................................... 4

    1.   Contractual Limitations for
         the Civil Rights Act of 1866 ........................................... 4

    2.   An appellee raising an issue
         for the first time on appeal..........................................7

    3.   The "maximum recovery rule" ................................... 8

    4.   Subjective or objective proof
         supporting punitive damages ....................................10

    5.   Use of assumptions by a human resource expert...................... 11

CONCLUSION..................................................................................12

CERTIFICATE OF SERVICE............................................................ 13

CERTIFICATE OF COMPLIANCE ...................................................14

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Burnett v. Grattan,*
468 U.S. 42 (1984) .......................................................... ii, 4, 5, 6

*Felder v. Casey,*
487 U.S. 131 (1988) ................................................................. 6

*Ford-Evans v. United Space All. LLC,*
329 F. App'x 519 (5th Cir. 2009) ......................................... ii, 7

*Fischer v. United Parcel Serv., Inc.,*
390 Fed. Appx. 465, 472 (6th Cir. 2010) ............................... 8, 9

*Jabat, Inc. v. Smith,*
201 F.3d 852 (7th Cir. 2000) ............................................... ii, 9

*Koster v. Trans World Airlines, Inc.,*
181 F.3d 24 (1st Cir. 1999) .................................................. ii, 8

*Lincoln v. Case,*
340 F.3d 283 (5th Cir. 2003) .............................................. iii, 11

*Matherne v. Wilson,*
851 F.2d 752 (5th Cir. 1988) .............................................. iii, 10

*Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.,*
532 F.3d 1063 (10th Cir. 2008) ........................................... ii, 9

*Njang v. Whitestone Group, Inc.,*
187 F. Supp. 3d 172 (D.D.C. 2016) ........................................ 6

*Order of United Commercial Travelers of America v. Wolfe,*
331 U.S. 586 (1947) ............................................................ ii, 5

*Passantino v. Johnson & Johnson Consumer Products, Inc.*,
    212 F.3d 493 (9th Cir. 2000) ...................................................ii, iii, 8, 9

*Schweiker v. Hogan*,
    457 U.S. 569 (1982) ...........................................................................ii, 7

*Shockley v. Arcan, Inc.*,
    248 F.3d 1349 (Fed. Cir. 2001) ...................................................... ii, 9

*Taylor v. W. & S. Life Ins. Co.*,
    966 F.2d 1188 (7th Cir.1992) ................................................................ 6

*Thurman v. DaimlerChrysler, Inc.*,
    397 F.3d 352 (6th Cir.2004) ................................................................ 6

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014) .......................................................ii, iii, 8

*Williams v. Illinois*,
    567 U.S. 50 (2012)..................................................................... iii, 11

## Rules

Fed. R. App. P. 11 ............................................................................... 5

Fed. R. App. P. 32(a)(7)(B) ...............................................................14

Fed. R. App. P. 35(b)(2) .....................................................................14

**TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:**

Jennifer Harris, the appellee and plaintiff, petitions the Court *en banc* to rehear this appeal.

## STATEMENT OF THE ISSUES

1.    Whether the panel's decision allowing a contractual shortening of a limitation for a claim under the Civil Rights Act of 1866 conflicts with Supreme Court case law.

2.    Whether the panel's decision that an appellee may not raise an argument for the first time on appeal conflicts with Fifth Circuit case law and the Supreme Court.

3.    Whether the Fifth Circuit's definition and application of the "maximum recovery rule" deserves reconsideration in light of constitutional issues and conflicting opinions in other circuits.

4.    Whether the panel decision on the subjective standard for sufficiency of evidence for punitive damages conflicts with Fifth Circuit case law that allows an objective standard.

5.    Whether a human resource expert may rely upon assumed facts to provide an opinion about discrimination and retaliation in the case.

## STATEMENT OF COURSE OF
## PROCEEDING AND DISPOSITION OF THE CASE

After a trial in the Southern District of Texas, a jury found that FedEx unlawfully retaliated against Harris in violation of Title VII and the Civil Rights Act of 1866. It found damages for pain and suffering, mental anguish, inconvenience, and loss of enjoyment of life in the amount of $1,160,000. The jury also found that FedEx acted with malice or reckless indifference to the rights of others, finding punitive damages in the amount of $365 million, just less than half of the net worth of the defendant, a FedEx subsidiary. The jury sent a note asking that "part of the punitive damages be earmarked for a third-party consultant to review, revise, and implement revised policy procedures for defendant."

Prior to trial, the district court denied FedEx's motion for summary judgment, including an assertion that Harris had passed a contractual six-month limitation for a claim under the Civil Rights Act of 1866.

On appeal, the panel found that the six-month contractual limitation was enforceable; that the evidence supported the jury verdict of retaliation; that the maximum amount of damages for pain and suffering, mental anguish, inconvenience, and loss of enjoyment is $248,619.57; that the evidence did not support the award of

any punitive damages; and that the district court erred in allowing at least part of an expert witness's testimony but that it did not have a sufficient effect on the verdict.

## STATEMENT OF NECESSARY FACTS

FedEx acknowledged Harris with its highest award, the President's Club, in her first year as sales manager. ROA.4805-06. The next year, Ms. Harris's supervisor, Michelle Lamb, began to treat Ms. Harris differently from her peers. ROA.4614-15, 4911-12. Ms. Harris complained of discrimination, then Ms. Lamb disciplined Harris for the first time in her career. ROA.5662-5, 5672-8. Salespersons who win the President's club often fail to repeat their success the following year because their goals are substantially adjusted upward and FedEx's policy is not to fire a person after a bad year and ROA.4263, 4479, 4513-14, 4627-30, 4778-7979. After being disciplined, Harris's sales performance continued to improve, ROA.4608-10, and to exceed the sales averages of several of her White peers. ROA.4617-18. Lamb admitted that the performance reason stated in the request for termination was not true. ROA.4518, 5742. At the time FedEx terminated Harris, FedEx knew that it was possible that the other District Sales Managers had lower sales than Harris for the last quarter. ROA.4521.

FedEx's HR Manager overseeing the investigations agreed that a company ignoring several red flags or signs of retaliation would be reckless. ROA.5310. Harris

presented evidence to the jury that FedEx ignored several red flags or signs of retaliation, including FedEx disciplining Harris two days after the conclusion of the investigation of her discrimination complaint. ROA.4408-4413, 5688-5720.

Ms. Harris's HR expert testified to industry standards, and if facts given to her as assumed were true, that industry standards were not followed. ROA.4304-5.

## ARGUMENTS AND AUTHORITIES

### 1. Contractual Limitations for the Civil Right Act of 1866.

The panel's decision is a first impression for the Fifth Circuit: whether a contractual provision shortening the four-year limitations period of the Civil Rights Act of 1866 to six-months is enforceable. The panel relied upon decisions of other courts finding the six-month contractual limitation enforceable. However, none of the decisions relied upon by the panel, indeed none of the decisions cited in any of the briefs as support, including amicus briefs, considered the Supreme Court decision in *Burnett*. Had any of the other courts considered the holding in *Burnett*, they would have followed the Supreme Court's reasoning and found the limitation on the Civil Rights Act of 1866 unenforceable. The initial oversight caused repeated oversight.

As a first principle, a contract may shorten a statute of limitations only if the shorter period is itself reasonable. *Wolfe*, 331 U.S. at 608. The Supreme Court

considered the reasonableness of a six-month limitation for a claim under the Civil Rights Act of 1866 in *Burnett.* 468 U.S. at 44. In reviewing the sufficiency of time, the Supreme Court listed the following concerns:

- litigating a civil rights claim requires considerable preparation;

- an injured person must recognize the constitutional dimensions of his injury;

- he must obtain counsel, or prepare to proceed pro se;

- he must conduct enough investigation to draft pleadings that meet the requirements of federal rules;[1]

- he must also establish the amount of his damages, prepare legal documents, pay a substantial filing fee or prepare additional papers to support a request to proceed in forma pauperis, and file and serve his complaint;

- the litigant must look ahead to the responsibilities that immediately follow filing of a complaint; and

- he must be prepared to withstand various responses, such as a motion to dismiss, as well as to undertake additional discovery.

*Burnett,* at 50.

---

[1] The Supreme Court noted the Rule 11, Fed. R. Civ. P., certification requirements: "to the best of his knowledge, information, and belief formed after reasonable inquiry [a complaint] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Burnett* at 50 n.13.

The Supreme Court held that a six-month time limit does not allow for the substantial burden federal law places on a civil rights litigant. *See id.* at 52. Further, shortening the limitation to six-months is manifestly inconsistent with the central objective of the Reconstruction–Era civil rights statutes, which is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief. *Id.* at 55. *See also Felder v. Casey*, 487 U.S. 131, 152 (1988) ("Civil rights victims often do not appreciate the constitutional nature of their injuries, see *Burnett,* 468 U.S., at 50, 104 S.Ct., at 2929, and thus will fail to file a notice of injury or claim within the requisite time period."). The precedential effect of *Burnett* is not restricted to a matter of analyzing an analogous state statute of limitations, *Burnett* is directly on point as to the reasonableness of the six-month period of time.

Courts, inadvertently ignoring the Supreme Court's analysis, have found opposite of the Supreme Court. *See Njang v. Whitestone Group, Inc.*, 187 F. Supp. 3d 172, 178 (D.D.C. 2016) (Katanji Brown Jackson) (six months is reasonable – the statute lacks "features that would make filing a claim within six months impracticable");*Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357–59 (6th Cir.2004) (six months provides the plaintiff with "ample time to investigate her claim and determine her damages."); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188,

1205-06 (7th Cir.1992) (six months is not so short a period of time as "to work a practical abrogation of the right of action."). The Fifth Circuit has an opportunity to lead other courts to correct this error.

## 2. An appellee raising an issue for the first time on appeal.

The panel held that Harris forfeited her right to make a statutory argument not presented to the district court that supports the affirmance of the district court's judgment. "Both Supreme Court and Fifth Circuit case-law support our permitting the appellees to raise arguments on appeal not considered by the district court." *Ford-Evans v. United Space All. LLC*, 329 F. App'x 519, 524 (5th Cir. 2009). *See Schweiker v. Hogan*, 457 U.S. 569, 585 (1982). Harris is an appellee. The cases the panel relies upon concern arguments by an appellant.

Harris argued that a Texas statute prohibited FedEx from shortening a statute of limitations less than two years. The Supreme Court has specifically allowed statutory arguments not presented to the district court that support the affirmance of the district court's judgment. *See Schweiker*, at 585 & n. 2. The panel decision to disallow the argument should be reheard.

### 3. The "maximum recovery rule."

"Exactitude is not truth," as Henri Matisse said in 1925.[2] The maximum recovery rule places an artificial cap on intangible damages. The exactitude of the limit in this case is $248,619.57, which appears to be the new baseline for a limit for compensatory employment cases.

The application of the "maximum recovery rule" naturally causes a split with other circuits. For example, the Second Circuit allows over $1 million. *See Turley,* 774 F.3d at 162 (2d Cir. 2014). The Tenth Circuit allowed $650,000 in 2010. *See Fischer v. United Parcel Serv., Inc.*, 390 Fed. Appx. 465, 472 (6th Cir. 2010). The Ninth Circuit allowed $1 million in 2000. *See Passantino,* 212 F.3d at 513 (9th Cir. 2000).

No other circuit has a percentage rule. Many circuits limit the damages to the evidence alone, and not to a range of damages. *See Koster,* 181 F.3d at 36 (1st Cir. 1999) ("the highest amount of damages for emotional distress for which there is adequate evidentiary support."); *Turley,* 774 F.3d at 162 (2d Cir. 2014) (juries have wide latitude in setting compensation for damages, stressing that our review is "narrow," considering only "whether the award is so high as to shock the judicial

---

[2] Jacques Guenne, "Interview with Henri Matisse," *L'Art Vivant* (15 September 1925), translated by Jack Flam in *Matisse on Art* (1995)

conscience and constitute a denial of justice."); *Shockley,* 248 F.3d at 1362 (Fed. Cir. 2001) (courts remit an excessive jury award to the highest amount the jury could "properly have awarded based on the relevant evidence."); *Fischer*, 390 Fed. Appx. at 472 (6th Cir. 2010) (Abuse of trial court discretion in considering (1) beyond the range supportable by proof; (2) so excessive as to shock the conscience of the court; or (3) the result of a mistake); *Jabat,* 201 F.3d at 858 (7th Cir. 2000) (following the federal circuit); *Passantino,* 212 F.3d at513 (9th Cir. 2000) ("While objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in either Washington, the Ninth Circuit, or the Supreme Court."); *Morrison Knudsen Corp.,* 532 F.3d at 1079 (10th Cir. 2008) ("This court will only disrupt a jury verdict if the verdict amount is not within the range of evidence.").

The Eighth Circuit, similar to the Fifth Circuit, considers similar awards. *See McCabe v. Parker,* 608 F.3d 1068, 1081 (8th Cir. 2010) (considering "past similar awards [and if] the verdict falls within the range established by previous awards ... we will uphold the decision."). The. D.C. Circuit relies on excessiveness that shocks the conscience. *See Langevine v. D.C.*, 106 F.3d 1018, 1024 (D.C. Cir. 1997) ("so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.").

The Fifth Circuit allows the district court discretion in the first instance, giving the plaintiff the option of a new trial to establish a different number rather than accepting the remitted amount. *See Matherne,* 851 F.2d at 762 (5th Cir. 1988). Using a range based on other cases conflicts with the purpose of a remittitur which allows a plaintiff due process of a choice of a new trial to determine a different amount rather than accept.

The panel did not consider the district court's discretion in the amount included in the judgment, which was set at $1,060,000. ROA.3938-9.[3] The Fifth Circuit's definition and application of the maximum recovery rule has serious due process and Seventh Amendment issues. The *en banc* court should review the matter to set a standard more in line with other circuits.

### 4. Subjective or objective proof supporting punitive damages.

The panel decision on the standard for sufficiency of evidence for punitive damages conflicts with Fifth Circuit case law. The panel found that the jury had sufficient evidence of retaliation as the motive for retaliation. The panel then found that Harris did not prove that Harris's supervisor did not believe Harris should be

---

[3] The judgment has a clerical error for future compensatory damages: $1,060,000. However, it is corrected in the final number: $366,060, which includes $120,000 in past compensatory damages and $1,040,000 in future compensatory damages. ROA.3938-9.

disciplined for "insubordination," not in retaliation for her complaints in the face of perceived risks of violation of federal law.

The panel's standard conflicts with *Lincoln v. Case*, 340 F.3d 283, 291 (5th Cir. 2003), in which this Court held that there can be little doubt that a businessperson, in that case a landlord, knows about federal discrimination laws to support punitive damages when the jury finds an illegal motive. The Fifth Circuit uses an objective standard for knowledge of perceived risks under the law, not subjective. A rehearing is necessary on this issue.

## 5. Use of assumptions by a human resource expert.

The panel decision disallowing testimony of an expert based on the assumption that that FedEx has an employment policy against discrimination and retaliation conflicts with Supreme Court and Fifth Circuit case law allowing experts to make reasonable assumptions as the basis for conclusions which a jury is free to accept or decline. "Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." Williams v. Illinois, 567 U.S. 50, 57 (2012) ("For more than 200 years, the law of evidence has permitted the sort of testimony that was given by the expert in this case."). Sherrod did not need to view documents, such as FedEx's policies to express her opinions. She did not rely on counsel for her conclusions as asserted in

the district court case cited by the panel, but upon the existence of assumed facts that a jury was free to find or not to find.

## CONCLUSION

Because of conflicts with the Supreme Court and other Fifth Circuit case law and because of the importance of the issues and decisions of other circuits, the petition should be granted.

Respectfully submitted,


_/s/ Brian P. Sanford_
BRIAN P. SANFORD
Texas Bar No. 17630700
Elizabeth "BB" Sanford
Texas Bar No. 24100618

THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, Texas 75201
(214) 717-6653
(214) 919-0113 Fax

**ATTORNEYS FOR APPELLANT
JENNIFER HARRIS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief has been filed with the Clerk for the U.S. Court of Appeals for the Fifth Circuit and served on counsel for Appellee on this the 1st day of March, 2024, by electronic means as follows:

All Counsel of Record

and

Lyle W. Cayce, Clerk
Fifth Circuit Court of Appeals
600 S. Maestri Place
New Orleans, LA 70130-3408

_____/s/ Brian P. Sanford_____

# CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 32, the undersigned certifies this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B).

1.  Exclusive of the exempted portions in FED. R. APP. P. 35(b)(2) this brief contains: 2,483 words.

2.  This brief has been prepared:
    in proportionally spaced typeface using:
    Software Name and Version: Word, Microsoft 365, Version 2909
    in (Typeface Name and Font Size): Equity A, 14 point font.

3.  If the Court so requests, the undersigned will provide an electronic version of the brief or a copy of the word or line printout.

4.  The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in FED. R. APP. R. 32(a)(7)(B), may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

*/s/ Brian P. Sanford*
Attorney for Appellant
Jennifer Harris
Dated: March 1, 2024

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2024

Lyle W. Cayce
Clerk

No. 23-20035

---

Jennifer Harris,

*Plaintiff—Appellee,*

*versus*

FedEx Corporate Services, Inc.,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1651

---

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

This appeal arises from a $366,160,000 jury verdict in favor of Plaintiff-Appellee Jennifer Harris and against Defendant-Appellant FedEx Corporate Services, Inc. (FedEx) for retaliation claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e17. FedEx challenges the jury's verdict, the damages awarded, and the district court's denial of a new trial due to the court's admission of Harris's expert's flawed testimony.

No. 23-20035

As we will discuss, Harris's § 1981 claims were time-barred under her employment contract, so they fail as a matter of law. Otherwise, the evidence was sufficient to support the jury's verdict for Harris on her Title VII retaliation claim. But in view of Title VII's $300,000 cap on damages and the evidence presented at trial, we remit Harris's compensatory damages to $248,619.57, and conclude she was not entitled to punitive damages. Likewise, FedEx is not entitled to a new trial because of the court's evidentiary ruling.

## I.

### A.

FedEx hired Harris, an African American woman, in 2007 as an Account Executive in sales. Relevant to this appeal, her employment contract contained a "Limitation Provision," which provides that "[t]o the extent the law allows an employee to bring legal action against the Company, [Harris] agrees to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of [her] lawsuit, whichever expires first." Harris was successful at her job, and FedEx promoted her to District Sales Manager in 2017. Her new supervisor was Michelle Lamb, a white woman.

Harris's new position required her to lead a team of eight Account Executives responsible for making sales in the Houston area. FedEx partly measured Harris's success by her team's sales. She was initially successful in her new role, so much that FedEx recognized her with an award in 2018. However, according to FedEx, Harris's and her team's performance started declining in mid-2018. From October 2018 to February 2019, Harris and Lamb met more than ten times to discuss strategies to improve Harris's team's performance. Despite those meetings, FedEx alleges Harris's sales continued to lag other teams.

No. 23-20035

In early March 2019, Lamb suggested Harris step down as a District Sales Manager. Harris was "blindsided" because "Lamb had not discussed any areas in which Harris needed to grow" in any of their prior meetings. Shortly thereafter, on March 11, Harris sent her first e-mail to a FedEx Vice President accusing Lamb of race discrimination. Human Resources (HR) advisor Michael Clark immediately opened an investigation, which he concluded on June 3. Clark interviewed six witnesses and completed a detailed analysis of each of Harris's allegations. He ultimately concluded that Harris's discrimination claims were unsubstantiated but recommended that Lamb be coached "to ensure she responds accordingly to all of her managers regarding work related questions."

FedEx policy did not allow Lamb to discipline Harris during an ongoing HR investigation. But on June 26, Lamb gave Harris a "Letter of Counseling for Unacceptable Performance." The letter required Harris to create a Performance Improvement Plan "highlighting the specific goals and activities [she] [would] focus[] on to improve [her] team's performance and accountability." It further advised Harris that "recurrent patterns of [her] performance [would] not be tolerated" and might result in her termination.

Two days later, Harris filed another internal complaint against Lamb, averring the letter was retaliation for her first discrimination complaint. Clark opened another investigation, which he concluded on September 6. He interviewed three witnesses and completed a detailed analysis of each of Harris's allegations. He again determined that Harris's claims were unsubstantiated, finding that "Lamb's decision to issue discipline to [Harris] was in line with the unacceptable performance that [Harris] and her direct reports continue to demonstrate."

On September 13, Lamb gave Harris a second "Letter of Warning," requiring Harris to submit another Performance Improvement Plan and

advising her again that failure to improve her performance might result in her termination. A week later, Harris submitted a third internal complaint. Clark again opened an investigation, interviewed two witnesses, completed a detailed analysis of each of Harris's allegations, and concluded on December 31 that Harris's claims were unsubstantiated.

On January 7, 2020, Lamb submitted a Request for Termination to HR, citing Harris's continued poor performance and failure to meet the terms of her two Performance Improvement Plans. HR approved the request, and FedEx fired Harris, effective January 8.

## B.

Harris filed suit in May 2021, sixteen months after FedEx fired her. She alleged race discrimination and retaliation under 42 U.S.C. § 1981. After months of discovery, FedEx moved for summary judgment, arguing *inter alia* that Harris's claims were time-barred by the six-month Limitation Provision in her contract. Harris responded and moved to amend her complaint to add claims for discrimination and retaliation under Title VII. The district court denied FedEx's motion and granted Harris leave to amend. It concluded that the Limitation Provision "cut[] against public policy and sidestep[ped] a federal administrative process designed to meet and defeat long-standing policies of bias and discrimination in the workplace." Thus, in October 2022, Harris's § 1981 claims proceeded to trial, along with her new Title VII claims.

At trial, FedEx presented evidence that it fired Harris because of her poor performance, not based on discrimination or in retaliation for her complaints. In response, Harris offered evidence of pretext to rebut FedEx's non-discriminatory and non-retaliatory reason. That evidence included (1) the temporal proximity between the filing of her internal complaints and FedEx's disciplinary actions; (2) that white employees had underperformed but had not been placed on a Performance Improvement Plan or terminated;

No. 23-20035

(3) that the only other person who was fired had also filed a discrimination complaint; and (4) that Lamb told HR that she had "extreme concern with [Harris's] behavior" because Harris was "taking the approach of arguing with [Lamb] about many things" and "demonstrating an insubordinate attitude."

As her first trial witness, Harris called Coneisha Sherrod to testify as a "human resources expert." After the district court overruled FedEx's objections,[1] Sherrod testified that FedEx "didn't follow normal protocol and procedure, and that discrimination and retaliation did occur." But Sherrod admitted on cross-examination that her testimony was based only on her review of Harris's complaint, and she conceded that she did not have any knowledge of FedEx's HR policies and procedures.

After Harris presented her evidence, FedEx moved for judgment as a matter of law. It argued that Harris's § 1981 claims were time-barred by the Limitation Provision in her contract; her evidence was insufficient to support her discrimination and retaliation claims; and punitive damages were unwarranted because Harris had failed to prove malice or reckless indifference. The district court denied FedEx's motion. As with FedEx's motion for summary judgment, the district court determined that the Limitation Provision did not apply. But instead of relying on its former reasoning that the Limitation Provision "cut against public policy," it held that the Limitation Provision applied only to lawsuits "arising out of [Harris's] contract of employment." The district court also found that

---

[1] FedEx had filed a motion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), before trial to exclude Sherrod's testimony, which the district court also denied.

No. 23-20035

Harris presented sufficient evidence to support her discrimination and retaliation claims and to submit the issue of punitive damages to the jury.

FedEx presented its case; the parties gave their closing arguments; and the jury deliberated for two days. The jury returned a verdict on October 25, 2022, finding that FedEx had not discriminated against Harris, but that it had retaliated against her. The jury awarded her $120,000 for "[p]ast pain and suffering, inconvenience, [and] mental anguish" and $1,040,000 for "[f]uture pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life."[2] It also found that Harris was entitled to punitive damages and awarded Harris an additional $365,000,000. Thus, the jury's verdict totaled $366,160,000.

Harris moved for entry of judgment in November 2022. FedEx responded, informing the district court that it intended to file post-trial motions. Subsequently, FedEx moved under Federal Rules of Civil Procedure 50(b) and 59 for judgment as a matter of law or in the alternative, for remittitur or a new trial. It renewed its arguments from its motion for judgment as a matter of law and added three new arguments: Harris's compensatory damages should be remitted pursuant to the maximum recovery rule; the punitive damages award was unconstitutionally excessive; and FedEx was entitled to a new trial based on Sherrod's testimony.[3] But the district court did not rule on FedEx's post-trial motions.[4] Instead, it entered

---

[2] For reasons not apparent from the record, the district court stated Harris was awarded $1,060,000 in future damages in its final judgment. That number contradicts the jury's verdict form.

[3] FedEx made additional arguments but does not renew them on appeal.

[4] "We treat the district court's entry of final judgment as an implicit denial of any outstanding motions, even if the court does not explicitly deny a particular motion." *Edwards v. 4LJ, L.L.C.*, 976 F.3d 463, 465 (5th Cir. 2020) (internal quotations omitted).

final judgment in February 2023 and ordered FedEx to pay Harris $366,060,000.[5]

## II.

FedEx raises five issues on appeal:  (A) whether the Limitation Provision in Harris's contract barred her § 1981 claims; (B) whether Harris presented sufficient evidence at trial to support her retaliation claim; (C) whether our maximum-recovery rule limits Harris's compensatory damages; (D) whether Harris presented sufficient evidence at trial to warrant punitive damages and whether the damages awarded were unconstitutionally excessive; and (E) whether FedEx is entitled to a new trial based on the district court's admission of Sherrod's testimony.  We examine each in turn.

## A.

FedEx first challenges the district court's denial of its motion for judgment as a matter of law as to Harris's § 1981 claims.  We review that issue *de novo*.  *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 377 (5th Cir. 2015).

FedEx contends that the Limitation Provision unambiguously applies to Harris's § 1981 claims and is reasonable and enforceable.  Harris counters that the Limitation Provision is not enforceable because (1) she did not knowingly and voluntarily accept it; (2) the Limitation Provision only applies to lawsuits arising out of her employment contract, not to discrimination or retaliation claims; (3) the six-month limitation period is unreasonable as applied to § 1981 claims; and (4) the Limitation Provision is unenforceable

---

[5] As stated in note 2, the district court's judgment awarded $1,060,000 in future damages instead of the $1,040,000 set forth in the jury's verdict.  It further subtracted $100,000 from the final award without explanation, resulting in the $366,060,000 judgment.

under Texas law.  We agree with FedEx that the Limitation Provision included in the parties' contractual agreement bars Harris's § 1981 claim.

Harris's first two counterarguments are easily dispatched.  She asserts she did not knowingly and voluntarily accept the Limitation Provision because it was in "small, hard-to-read print" and "[s]he does not remember reading th[e] provision and no one pointed it out to her."  But "parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008).  Harris is not excused from the Limitation Provision simply because she did not read it.

Harris next adopts the district court's reasoning that the Limitation Provision is a "self-contained provision" that only applies to "lawsuits about events arising out of [the] contract of employment, not discrimination or retaliation claims."  But that interpretation is contrary to the plain language of the contract.  The phrase "legal action" is not confined to claims arising out of Harris's employment contract.  Instead, it is modified by the phrase "[t]o the extent the law allows."  That language is broad enough to encompass retaliation and discrimination claims.

For her third argument—that a six-month limitation period is unreasonable as applied to § 1981 claims—Harris relies on *Burnett v. Grattan*, 468 U.S. 42 (1984).  In *Burnett*, the Court declined to apply Maryland's six-month statute of limitations for filing employment discrimination complaints to the plaintiffs' § 1981 claims. *Id.* at 49–55.  It reasoned that "borrowing an administrative statute of limitations ignores the dominant characteristic of civil rights actions: they belong in court." *Id.* at 50.  The Court explained that "[l]itigating a civil rights claim requires considerable preparation," and applying a six-month statute of limitations is

No. 23-20035

"manifestly inconsistent with the central objective of the Reconstruction-Era civil right statutes, which is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." *Id.* at 50, 55.

But there is an important distinction between *Burnett* and this case: FedEx is not asking us to enforce a state statute, but rather a contractual limitation provision. And "it is well established that . . . a provision in a contract may validly limit . . . the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 107 (2013) (applying *Wolfe* in the ERISA context). The question, therefore, is whether a six-month contractual limitation is reasonable as applied to § 1981 claims.

Other courts have concluded that it is. *E.g.*, *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357–58 (6th Cir. 2004); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1202–06 (7th Cir. 1992); *Njang v. Whitestone Grp., Inc.*, 187 F. Supp. 3d 172, 178–79 (D.D.C. 2016). "[B]y enacting section 1981 without a statute of limitations, Congress implied that it is willing to live with a wide range of state statutes and rules governing limitations of actions under section 1981." *Taylor*, 966 F.2d at 1205. And in *Njang*, then-Judge Ketanji Brown Jackson explained that a six-month limitation period for § 1981 claims is not unreasonable because, unlike Title VII claims, "there are no time-consuming procedural prerequisites that a plaintiff must satisfy before she brings her claim in court." 187 F. Supp. 3d at 179 (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 466 (1975)).[6] She further noted that

---

[6] FedEx rightfully does not assert that the Limitation Provision applies to Harris's Title VII claims. Unlike § 1981 claims, a plaintiff alleging claims under Title VII must first

No. 23-20035

a six-month period is not "inherently unreasonable" because such a period is "prescribed in various other federal laws." *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–72 (1983)). We find Justice Jackson's reasoning persuasive and see no reason to depart from other circuits on this issue. The Limitation Provision in Harris's contract is reasonable as applied to her § 1981 claims.

Fourth and finally, Harris contends that, even if the Limitation Provision is reasonable, it is unenforceable under Texas law. She cites Texas Civil Practice & Remedies Code § 16.070, which states:

> [A] person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void . . . .

Harris did not raise this argument in the district court. Generally, "[a] party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal . . . ." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). True, we have discretion to consider a forfeited issue if "it is a purely legal matter and failure to consider the issue will result in a miscarriage of justice." *Id.* at 398 (quoting *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 453 (5th Cir. 2008)). "But what constitutes a pure legal question or a miscarriage of justice is 'a question with no certain answer.'" *Id.* (quoting *Essinger*, 534 F.3d at 453).

---

file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1). Typically, a plaintiff must then wait 180 days before she can file suit. *See id.* § 2000e-5(f)(1). Thus, a six-month contractual limitation provision for Title VII claims would be unreasonable because it would amount to "'a practical abrogation of the right of action' under Title VII." *Njang*, 187 F. Supp. 3d at 179–81 (quoting *Taylor*, 966 F.2d at 1205–06).

No. 23-20035

Regardless, we find no miscarriage of justice here. Harris could have raised the issue in her response to FedEx's motion for summary judgment before trial or in her response to FedEx' motion for judgment as a matter of law during trial, but she did not. On substance, Harris cites no authority from Texas or this court applying § 16.070 to any cause of action other than a breach-of-contract claim. *But see Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, No. 3:13-CV-1096, 2013 WL 4603165, at *5 (N.D. Tex. Aug. 29, 2013) (collecting contrary cases and holding that § 16.070 did not apply to plaintiff's Title VII and § 1981 claims). All told, "[w]e see no principled basis for addressing [Harris's] forfeited argument here." *Rollins*, 8 F.4th at 398.

To sum up: The Limitation Provision in Harris's contract is reasonable and enforceable, and the district court erred by allowing Harris's § 1981 claims to proceed to trial. That determination has outsized importance here because § 1981 claims are not subject to statutory caps, but Title VII claims are. *See* 42 U.S.C. § 1981a(a)(1) (allowing recovery of compensatory and punitive damages under Title VII "provided that the complaining party cannot recover under section 1981"); *id.* § 1981a(b)(3)(D) (capping damages, inclusive of punitive damages, at $300,000). Because we reverse the district court's denial of FedEx's motion for judgment as a matter of law as to Harris's § 1981 claims, the most she can recover is $300,000.[7]

---

[7] Our dismissal of Harris's § 1981 retaliation claim has no bearing on the jury's finding for Harris on her Title VII retaliation claim. Though "the remedies available under Title VII and under § 1981 . . . are separate, distinct, and independent," *Johnson*, 421 U.S. at 461, we (and the jury) analyze them under the same evidentiary framework, *Sanders v. Christwood*, 970 F.3d 558, 561 n.7 (5th Cir. 2020) (quoting *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999)).

No. 23-20035

## B.

FedEx next contends that Harris did not present sufficient evidence to substantiate her retaliation claim. We review a post-verdict challenge to the sufficiency of the evidence using the same standard the district court used in first passing on the motion, namely whether "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Nobach*, 799 F.3d at 377–78 (quoting Fed. R. Civ. P. 50(a)(1)). We consider all the evidence in the record, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), "draw[ing] all reasonable inferences in the light most favorable to the verdict," *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013). We may not make credibility determinations, weigh evidence, or draw inferences because those "are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "[A] Rule 50 motion must be denied 'unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 431 (5th Cir. 2022) (alteration in original) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)), *cert. denied*, 143 S. Ct. 745 (2023).

Initially, Harris was required to succeed under the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973); *Laxton v. Gap Inc.*, 333 F.3d 572, 577–79 (5th Cir. 2003). But "[t]he *McDonnell Douglas* formula . . . is applicable only in a directed verdict or summary judgment situation and is not the proper vehicle for evaluating a case that has been fully tried on the merits." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 575 (5th Cir. 2004) (internal quotations and citation omitted). Accordingly, "[p]ost-trial, the [*McDonnell Douglas*] framework becomes moot . . . ." *Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 691 (5th Cir. 2007) (citing *Bryant v. Compass Grp. USA Inc.*, 413

No. 23-20035

F.3d 471, 476 (5th Cir. 2005)).[8] Thus, "[w]e need not parse the evidence into discrete segments corresponding to a prima facie case, an articulation of a legitimate, nondiscriminatory reason for the employer's decision, and a showing of pretext." *Bryant*, 413 F.3d at 476 (quoting *Vaughn v. Sabine County*, 104 F. App'x 980, 982 (5th Cir. 2004)). Instead, we need only decide "whether the record contains sufficient evidence for a reasonable jury to determine that [FedEx's] stated reason for terminating [Harris] was pretext [for retaliation]." *Id.*

"Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020). One way to show pretext is by providing evidence that similarly situated employees were treated more favorably. *See id.* at 580. And while temporal proximity between a protected activity and an adverse employment action is not sufficient by itself to demonstrate pretext, "other evidence, in combination with . . . temporal proximity, is sufficient for a reasonable jury to find but-for causation." *Id.* at 579.

Harris's strongest evidence of pretext at trial was that she was treated less favorably than similarly situated employees. Specifically, she offered evidence that other District Sales Managers performed the same or worse than she did but were not given warnings and were not fired. Further bolstering her retaliation claim, Harris presented evidence that the only other employee who was terminated for poor performance also filed a discrimination complaint. FedEx attempts to refute that evidence by

---

[8] Likewise, the district court, correctly, did not frame the jury instructions "based upon the intricacies of the *McDonnell Douglas* burden shifting analysis." *Kanida*, 363 F.3d at 576. Instead, the jury only considered "the ultimate question of whether [FedEx] took the adverse employment action against [Harris] because of her protected status." *Id.*

asserting that Harris's comparators were not similarly situated because they performed better than Harris overall. But as FedEx notes in its own reply brief, "[c]onstrued in Harris's favor, the evidence at trial demonstrated, at most, that certain of her sales numbers were better than certain of her peers' numbers at certain times." To accept FedEx's view of the evidence and reject the jury's, we would necessarily wade into making credibility determinations, weighing the evidence, and drawing inferences. This we cannot do. *See Reeves*, 530 U.S. at 150–51 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Harris also provided other evidence of pretext. She showed temporal proximity between the filing of her internal complaints and Lamb's disciplinary actions; each adverse employment action took place less than a month after an internal investigation into Harris's protected activities.[9] And on cross-examination Lamb testified that she told HR that she had "extreme concern with [Harris's] behavior" because Harris was "taking the approach of arguing with [Lamb] about many things" and "demonstrating an insubordinate attitude." That evidence could be viewed as further supporting the jury's verdict.

Admittedly, FedEx presented substantial evidence that Harris was terminated because of her poor performance, not in retaliation for her discrimination complaints. Arguably, the temporal proximity of Harris's internal complaints and FedEx's adverse employment actions was also self-generated, in that there was a pattern of Harris filing a complaint when she knew adverse action was imminent. But considering all of Harris's evidence and resolving credibility determinations in favor of the verdict, "we cannot

---

[9] As noted, FedEx policy did not allow Lamb to discipline Harris while an investigation was ongoing.

say the jury's verdict is against the great weight of the evidence or that a reasonable person could only have reached an opposite decision." *Wantou*, 23 F.4th at 437. "Although we might reach a different result if we considered the claim in the first instance, that is not the role of the appellate court." *Id.* Given the great deference owed to jury verdicts, we find that Harris presented sufficient evidence to support her retaliation claim.

## C.

Having determined that Harris presented sufficient evidence to support her retaliation claim, we now examine whether that evidence supports the jury's compensatory damages award. "There is a strong presumption in favor of affirming a jury award of damages." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). "The damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice." *Id.* "However, when this court is left with the perception that the verdict is clearly excessive, deference must be abandoned." *Id.* "A verdict is excessive if it is 'contrary to right reason' or 'entirely disproportionate to the injury sustained.'" *Id.* (quoting *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)). "When deciding whether a jury award is excessive, we consider the amount of the award after application of the statutory cap, not the amount given by the jury." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 487 (5th Cir. 2001).

Generally, we use the maximum recovery rule to determine whether damages are excessive. *See Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 364–65 (5th Cir. 2019).[10] The maximum recovery rule requires us to "look[]

---

[10] This court "ha[s] been inconsistent about where in the analysis the [maximum recovery] rule has a role." *Longoria*, 932 F.3d at 365. "Sometimes we apply maximum recovery at the outset to determine whether the damages are excessive." *Id.* (collecting cases). "Other times we use the rule only to determine how much of a reduction is

No. 23-20035

to other published decisions from the relevant jurisdiction . . . involving comparable facts." *Id.* at 365. "The relevant jurisdiction for federal discrimination law can only mean cases decided by this court." *Salinas v. O'Neill*, 286 F.3d 827, 832 (5th Cir. 2002) (internal quotations omitted). "When 'defects in the award are readily identifiable and measurable,' remittitur ordinarily is appropriate." *Wantou*, 23 F.4th at 431 (quoting *Matter of 3 Star Props., L.L.C.*, 6 F.4th 595, 613 (5th Cir. 2021)). We have discretion either to set the remitted verdict or to remand the case for the district court to do so. *Longoria*, 932 F.3d at 368.

Because Harris's § 1981 claims are time-barred and Title VII's statutory cap otherwise applies, *see supra* Part II.A, the question before us is whether an award of $300,000 is excessive in this case. *See Giles*, 245 F.3d at 487. Several prior cases serve as possible analogues.

FedEx offers two employment discrimination cases to argue that we should limit Harris's compensatory damages to $15,000.[11] *See Vadie v. Miss. State Univ.*, 218 F.3d 365 (5th Cir. 2000); *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927 (5th Cir. 1996). In *Vadie*, the jury awarded the plaintiff $350,000 in compensatory damages for emotional distress, which the district court reduced to $300,000 based on Title VII's statutory cap. 218 F.3d at 370. The only evidence supporting emotional damages was the plaintiff's own brief testimony that failing to get the job as a professor "destroyed" him, "totally ruined" him, and he became "sick, totally ill, physical, mentally, and

---

warranted after deciding the award is excessive." *Id.* (same). Because this case arises under federal law, this inconsistency is of no moment to our analysis. *See id.* at 364–66 (explaining that the issue may matter in diversity cases).

[11] FedEx calculated its $15,000 number by multiplying our award of $10,000 in *Vadie* by 150%. We discuss the appropriate way to calculate remittitur using the maximum recovery rule below.

No. 23-20035

everything." *Id.* at 377. Though this court held that Vadie's "testimony was sufficient to support a finding of actual injury," the panel remitted his compensatory damages from $300,000 to $10,000 because the record was "devoid of any specific evidence whatsoever supporting Dr. Vadie's broad assertions of emotional injury." *Id.* at 377–78.

In *Patterson*, the district court, after a bench trial, awarded one plaintiff $40,000 in emotional damages under § 1981 and another plaintiff $150,000 in emotional damages under Title VII. 90 F.3d at 937. The § 1981 plaintiff's sole evidence was his own testimony that he felt "frustrated" and "real bad," and that his work environment was "tearing [his] self-esteem down." *Id.* at 939. The Title VII plaintiff's sole evidence was her testimony that she was "emotionally scarred" after her termination and "that she endured a great deal of familial discord" because she had to leave her children to look for other jobs. *Id.* at 940–41. This court held that the plaintiffs' limited testimony did not support the district court's damages awards and remanded with instructions for the district court to award nominal damages. *Id.* Our court noted that "[h]urt feelings, anger[,] and frustration are part of life," and clarified that "[u]nless the cause of action manifests some specific discernable injury to the claimant's emotional state," then substantial emotional damages are not warranted. *Id.* at 940.

Harris counters with four published decisions where the plaintiffs were awarded between $100,000 and $150,000 for emotional damages in Title VII cases.[12] *See Salinas*, 286 F.3d at 827; *Giles*, 245 F.3d at 474;

---

[12] Harris initially contends that the maximum recovery rule is not implicated because her case "presents unique facts for which there are no controlling cases." *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 739 (5th Cir. 2011). But *Learmonth* was a personal injury case where the plaintiff suffered traumatic injuries that required treatment for the rest of her life. *Id.* at 738. Nothing in the record suggests that Harris's claim is materially different than other retaliation cases.

No. 23-20035

*Williams v. Trader Publ'g Co.*, 218 F.3d 481 (5th Cir. 2000); *Forsyth v. City of Dallas*, 91 F.3d 769 (5th Cir. 1996). Two are particularly noteworthy.

In *Salinas*, the plaintiff and his wife testified about "Salinas's loss of self-esteem, feelings of not being a competent agent, loss of sleep, stress, paranoia, fear of future retaliation, and high blood pressure," as well as his numerous trips to the doctor. 286 F.3d at 829–30, 832. As in this case, the jury awarded Salinas one million dollars in compensatory damages, which the district court reduced to $300,000 based on Title VII's statutory cap. *Id.* at 829. This court distinguished Salinas's case from *Vadie*, observing that Salinas "offered a much more detailed description of the emotional harm he suffered," and that his testimony was corroborated by his wife. *Id.* at 832–33. Even then, our court held that "Salinas ha[d] not presented enough evidence to support an award of $300,000." *Id.* at 833. Rather, "a comparison with other emotional damages awards . . . stemming from discrimination point[ed] to $100,000 as the proper award." *Id.*

In *Giles*, the jury awarded the plaintiff $400,000 in compensatory damages, which the district court reduced to $300,000. 245 F.3d at 487. At trial, Giles "primarily [relied] on his own testimony to support his contention of emotional distress," but he also offered testimony from a co-worker. *Id.* at 488. Giles testified that he had "trouble sleeping, suffered headaches and marital difficulties, and lost the prestige and social connections associated with his position at GE." *Id.* His co-worker testified that Giles "appeared despondent, depressed, down and absolutely utterly discouraged about not being able to come back to work." *Id.* This court determined that Giles's and his co-worker's testimony was "specific enough to allow a jury to award compensatory damages." *Id.* at 489. But the panel remitted the amount to $100,000 because "[t]he symptoms of which Giles complain[ed] [did] not support an award of $300,000." *Id.* at 489.

No. 23-20035

Harris's case is more like *Salinas* and *Giles* than *Vadie* and *Patterson*. Harris testified at length about the emotional distress she suffered from Lamb's conduct and her termination. Specifically, Harris stated she suffered from stress and anxiety, which resulted in dry heaving; she took medication and sought professional help; she had trouble sleeping; she gained weight; and she generally lost her enjoyment of life. Harris's pastor, her cousin, and a long-time friend also testified on her behalf. Her pastor testified that after her termination "it was like the bottom fell out . . . . She was so emotionally destroyed." He was "worried about her mental state because . . . [he] was just worried about if she was going to do something crazy." Harris's cousin testified that after her termination, she noticed Harris "was having to go to the doctor more for stomach issues" and that "she was gaining weight." And Harris's friend testified that after her termination, Harris "had a sadness about herself," and "[s]he wasn't . . . the optimistic . . . hopeful friend that she was used to."

That evidence is more than the cursory, uncorroborated testimony in *Vadie* and *Patterson*. Indeed, like the plaintiffs in *Salinas* and *Giles*, Harris sought medical treatment, testified to physical symptoms resulting from her emotional distress, and had other witnesses corroborate her testimony. Hence, Harris is entitled to more than nominal damages. However, Harris's symptoms do not warrant a $300,000 compensatory damage award. *See Giles*, 245 F.3d at 489. Instead, a comparison of her case with this court's precedent suggests a base sum of $100,000 is more appropriate. *See Salinas*, 286 F.3d at 833; *Giles*, 245 F.3d at 489; *see also Williams*, 218 F.3d at 486 (upholding $100,000 award in sex discrimination case based on plaintiff's testimony that her discharge resulted in "sleep loss, beginning smoking[,] and severe weight loss"); *Forsyth*, 91 F.3d at 776 (upholding $100,000 award for emotional damages in § 1983 case based on plaintiff's testimony that "she

suffered depression, weight loss, intestinal troubles, and marital problems, . . . and that she had to consult a psychologist").

In view of that, we remit Harris's damages using the maximum recovery rule. *See Longoria*, 932 F.3d at 368. "The rule allows some leeway, so it permits a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published decision." *Id.* at 365; *see Salinas*, 286 F.3d at 831.[13] We employ *Salinas* as an analogue and start with a base sum of $100,000. *Salinas* was published in April 2002. Adjusted for inflation, a $100,000 award back then is equal to $165,746.38 in October 2022, when the jury returned its verdict.[14] That amount properly compensates Harris for her damages shown at trial. But "[t]o avoid substituting our judgment for that of the jury," we also multiply that number by 150%, *see Giles*, 245 F.3d at 489, entitling Harris to $248,619.57 in compensatory damages.

## D.

Next, we consider whether Harris presented sufficient evidence to support an award of punitive damages. Again, we ask whether "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Nobach*, 799 F.3d at 377–78 (quoting Fed. R. Civ. P. 50(a)(1)).

"A Title VII plaintiff may recover punitive damages upon proof that the defendant acted 'with malice or with reckless indifference to the federally

---

[13] We do not apply the multiplier when such a calculation was a part of the initial award because doing so "could lead to explosive growth in damage awards." *Salinas*, 286 F.3d at 831. In *Salinas*, as here, the multiplier was not part of the damages awarded at trial, so the *Salinas* court multiplied the base $100,000 award by 150% and thereby set the plaintiff's compensatory damage award at $150,000.

[14] We used the CPI Inflation Calculator from the Bureau of Labor Statistics, available at https://data.bls.gov/cgi-bin/cpicalc.pl. *See Longoria*, 932 F.3d at 367 n.6.

protected rights of an aggrieved individual.'" *Wantou*, 23 F.4th at 439 (quoting 42 U.S.C. § 1981a(b)(1)). "This is a higher standard than the showing necessary for compensatory damages." *Id.* "Thus, 'not every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless indifference.'" *Id.* (quoting *Hardin v. Caterpillar, Inc.*, 227 F.3d 268, 270 (5th Cir. 2000)).

"Ultimately, the terms 'malice' and 'reckless indifference' 'focus on the actor's state of mind.'" *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). "Both 'pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination [or retaliatory conduct].'" *Id.* (alteration in original) (quoting *Kolstad*, 527 U.S. at 535). Thus, the defendant employer "must at least [have] [retaliated] in the face of a perceived risk that [her] actions w[ould] violate federal law to be liable for punitive damages." *Id.* at 440 (alterations in original) (quoting *Boh Bros.*, 731 F.3d at 467). "Moreover, even if particular agents acted with malice or reckless indifference, an employer may avoid vicarious punitive damages liability if it can show that it made good-faith efforts to comply with Title VII." *Boh Bros.*, 731 F.3d at 467. "Given these stringent standards, a plaintiff faces . . . a 'formidable burden' in seeking punitive damages for employment discrimination." *Id.* (quoting *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 903 (8th Cir. 2006)).

Although we affirm the jury's finding that Lamb engaged in retaliation, Harris does not meet the higher burden to show that Lamb did so "in the face of a perceived risk" that her actions would violate federal law. *See id.* at 468. While Lamb testified that she told HR that she had "extreme concern with [Harris's] behavior" because Harris was "taking the approach of arguing with [Lamb] about many things," Lamb also testified that she made those comments because she "believe[d] . . . those concerns need[ed]

No. 23-20035

to be taken into consideration" because they showed a lack of accountability and "wanting to argue" on Harris's part. The evidence suggests that Lamb believed Harris should be disciplined for "insubordination," not in retaliation for her complaints. And for punitive damages, it is the employer's subjective intent that matters. "Because the uncontroverted evidence shows that [Lamb] did not subjectively perceive a risk of violation of federal law, we conclude that [FedEx] was entitled to judgment as matter of law overturning the jury's punitive-damage award." *Id.*

Even if Lamb had acted with malice and reckless indifference, FedEx was still entitled to judgment as a matter of law because FedEx made good-faith efforts to comply with Title VII. Each time Harris filed an internal complaint, HR conducted an in-depth investigation: Clark interviewed multiple witnesses, examined relevant evidence, and provided a detailed analysis of Harris's allegations. Moreover, FedEx policy did not allow Lamb to discipline Harris while Clark's investigations were ongoing. FedEx's actions in this case are unlike other cases where this court has found companies vicariously liable for punitive damages because they ignored the plaintiff's complaints. *See, e.g.*, *Wantou*, 23 F.4th at 440; *Rhines v. Salinas Const. Techs., Ltd.*, 574 F. App'x 362, 368 (5th Cir. 2014); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999). Accordingly, FedEx was also entitled to judgment as a matter of law as to punitive damages based on its good-faith efforts to comply with Title VII.

Because Harris failed to meet the heavy burden required for punitive damages in Title VII cases, we reverse the district court's denial of judgment as a matter of law on this issue and vacate the punitive-damages award.[15]

---

[15] Because we find Harris is not entitled to punitive damages as a matter of law, we need not determine the constitutionality of the jury's punitive damages award.

No. 23-20035

### E.

Finally, FedEx contends it is entitled to a new trial based on Harris's expert Sherrod's testimony. "We review a district court's evidentiary rulings and denial of a motion for a new trial [for abuse of discretion]." *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 627 (5th Cir. 2018). "[T]o vacate a judgment based on an error in an evidentiary ruling, 'this court must find that the substantial rights of the parties were affected.'" *Wantou*, 23 F.4th at 432 (alteration in original) (quoting *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.4th 358, 370 (5th Cir. 2000)). This "requires that the error be prejudicial; it must affect the outcome of the proceeding." *Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1125–26 (5th Cir. 1997) (quoting *United States v. Calverley*, 37 F.3d 160, 164 (5th Cir. 1994)). "If the court is sure, after reviewing the *entire* record, that the error did not influence the jury or had but a very slight effect on its verdict," then a party's substantial rights have not been affected. *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995) (internal quotations and citations omitted).

"Under Federal Rule of Evidence 702, district courts are assigned a gatekeeping role to determine the admissibility of expert testimony." *United States v. Valencia*, 600 F.3d 389, 423–24 (5th Cir. 2010). "The court must find that the evidence is both relevant and reliable before it may be admitted." *Id.* at 424. "This requires more than a glance at the expert's credentials; the court must also ensure that the expert has reliably applied the methods in question." *Id.* Mindful of these guideposts, we conclude that the district court abused its discretion by allowing Sherrod to opine that FedEx "didn't follow normal protocol and procedure, and that discrimination and retaliation did occur."

FedEx filed a pre-trial motion to exclude Sherrod's testimony in part because she "d[id] not utilize a reliable methodology as required by

No. 23-20035

*Daubert*." FedEx asserted that Sherrod's testimony was based solely on her review of Harris's complaint, such that she had not reviewed any of FedEx's policies or Harris's employment contract. The district court denied FedEx's motion "[b]ased on Sherrod's vast experience in the HR area, and the fact that she has been permitted to testify in federal courts on several occasions." When FedEx renewed its objections at trial, the district court overruled them, pointing to the reasoning in its prior order.

On cross-examination, Sherrod conceded that she did not have any knowledge of FedEx's HR policies and procedures and that her testimony was based only on her review of Harris's complaint. This is problematic because an expert's testimony must be "based on sufficient facts or data." FED. R. EVID. 702(b). "Although . . . an expert can rely on information provided by a party's attorney, . . . an expert cannot forgo [her] own independent analysis and rely exclusively on what an interested party tells them." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013). By allowing Sherrod to testify without a proper foundation, the district court abdicated its role as gatekeeper. Though we generally "afford broad discretion to a district court's evidentiary rulings," *Adams v. Mem'l Hermann*, 973 F.3d 343, 352 (5th Cir. 2020) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)), Sherrod's opinions about FedEx's "protocol and procedure"—and, indeed, her opinion "that discrimination and retaliation did occur"—should not have been allowed through the gate.

Nevertheless, FedEx fails to show that Sherrod's testimony affected its substantial rights. Even without Sherrod's testimony, Harris presented sufficient evidence for a reasonable jury to find that Lamb retaliated against her. *See supra* Part II.B. Additionally, Sherrod was subject to FedEx's vigorous cross-examination, affording FedEx the chance to demonstrate the deficiencies and inadequacies of her testimony, which the jury was then free

to consider.  And assuming *arguendo* that the jury relied on Sherrod's testimony in awarding punitive damages, that prejudice is cured by our overturning the jury's punitive award.  FedEx has not otherwise shown that the district court's admission of Sherrod's testimony "influence[d] the jury or had [more than] a very slight effect on its verdict," *Kelly*, 61 F.3d at 361, such that a new trial would be warranted.

## III.

For the foregoing reasons, we reverse the district court's denial of FedEx's motion for judgment as a matter of law as to Harris's § 1981 and punitive damages claims, render judgment in favor of FedEx on those claims, and vacate the jury's award of punitive damages.  We affirm the jury's verdict in favor of Harris as to her Title VII retaliation claim, but we remit Harris's compensatory damages to $248,619.57.  Finally, we affirm the district court's denial of FedEx's motion for a new trial.

AFFIRMED in part; REVERSED and RENDERED in part.